UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PATRICIA L. MAHON,

    Plaintiff,

v.    Case No: 8:16-cv-1462-T-JSS

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **ORDER**

Plaintiff, Patricia L. Mahon, seeks judicial review of the denial of her claim for disability insurance benefits. As the Administrative Law Judge's ("ALJ") decision did not employ proper legal standards, the decision is reversed in part.

## **BACKGROUND**

Plaintiff filed an application for disability insurance benefits on May 18, 2010. (Tr. 113–14.) The Commissioner denied Plaintiff's claims both initially and upon reconsideration. (Tr. 65–67, 70–71.) Plaintiff then requested an administrative hearing. (Tr. 72–73.) Upon Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified. (Tr. 29–57.) Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits. (Tr. 10–28.) Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied. (Tr. 1–3.)

Plaintiff appealed the denial of benefits to this Court. (Tr. 516–31.) The Court reversed the ALJ's decision and instructed that, on remand, the ALJ reconsider the medical opinions and clearly specify the weight assigned to the opinions ("Remand Order"). (Tr. 530.) Pursuant to the

Remand Order, the Appeals Council vacated the final decision of the ALJ and remanded the case to the ALJ "for further proceedings consistent with the order of the court." (Tr. 404–08.)

The ALJ held a new hearing in January 2016 and issued a new decision on March 9, 2016. (Tr. 382–93, 404–28.) In the ALJ's March 9, 2016 decision, the ALJ concluded that Plaintiff, who alleged disability beginning on July 15, 2009, was not disabled prior to April 29, 2014, but became disabled on that date and continues to be disabled. (Tr. 382–83.)

In rendering the decision, the ALJ concluded that Plaintiff had not performed substantial gainful activity since July 15, 2009, the alleged onset date. (Tr. 384.) The ALJ determined that Plaintiff had the following severe impairments: depression, bipolar disorder, anxiety, and posttraumatic stress disorder. (Tr. 385.) Notwithstanding the noted impairments, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"). (Tr. 385.)

The ALJ then concluded that, before Plaintiff became disabled on April 29, 2014, she retained the following residual functional capacity ("RFC"):

> perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can only perform simple and repetitive tasks, can handle ordinary and routine changes in work settings or duties, and should not perform rapid production or rapid quota-type jobs. The claimant is limited to only occasional interaction with the public, coworkers, and supervisors. The claimant can maintain attention and concentration for 2 hours and then would need a 10-minute break.

(Tr. 386.) In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms prior to April 29, 2014, were not fully credible. (Tr. 387.)

However, as to the credibility of Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms after April 29, 2014, the ALJ found Plaintiff's allegations fully credible. (Tr. 389.) Accordingly, the ALJ concluded that beginning on April 29, 2014, Plaintiff retained the same RFC, except that Plaintiff could maintain attention and concentration for only one hour, instead of two, before needing a ten-minute break. (Tr. 390.)

The ALJ found that since July 15, 2009, the alleged onset date, Plaintiff has been unable to perform past relevant work. (Tr. 390.) The ALJ concluded that, prior to April 29, 2014, considering Plaintiff's age, education, work experience, RFC, and the testimony of a vocational expert ("VE"), Plaintiff would be capable of performing the work of a housekeeping cleaner, office helper, and stock checker. (Tr. 392.) Therefore, the ALJ concluded that Plaintiff was not disabled prior to April 29, 2014. (Tr. 392.) However, beginning on April 29, 2014, "[t]he [VE] testified that with the limitation that the claimant could only maintain attention and concentration for one hour at a time and then would need a 10-minute break, there are no jobs in the national economy that the individual could perform." (Tr. 392.) Accordingly, the ALJ concluded that Plaintiff became disabled on April 29, 2014, and has continued to be disabled through the date of his decision. (Tr. 393.)

Plaintiff appeals the ALJ's March 9, 2016 decision. (Dkt. 1.) The case is now ripe for review under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

**APPLICABLE STANDARDS**

To be entitled to benefits, a claimant must be disabled, meaning that the claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 416.920(a). Under this process, the ALJ must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; (3) whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1; and, (4) whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); 20 C.F.R. § 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the

factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).

In reviewing the Commissioner's decision, the court may not decide the facts anew, reweigh the evidence, or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## ANALYSIS

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ failed to follow the Court's instructions in the Remand Order; (2) the ALJ's finding that Plaintiff became disabled on April 29, 2014, is "wholly arbitrary"; (3) the RFC assessment fails to account for all of Plaintiff's mental limitations; and (4) the ALJ erred in his assessment of Plaintiff's credibility. For the reasons that follow, Plaintiff's first and second contentions warrant reversal.

### A. Remand Order

Plaintiff argues that the ALJ did not follow the Remand Order's instructions to reconsider and "clearly specify the weight assigned to" the medical opinions of Dr. B.J. Hatton, Dr. Don DelBeato, and Dr. Luis Rodriguez. (Dkt. 13 at 7–12.)

Dr. Hatton, an examining physician, performed a psychological evaluation of Plaintiff in July 2010. (Tr. 309–14.) In her mental status examination, Dr. Hatton noted that although Plaintiff

appeared anxious, "somewhat depressed," and apathetic, her speech and language skills were good, and her thought processes were relevant, coherent, and organized. (Tr. 313.) Further, Dr. Hatton summarized results of mental status tests she administered:

> [Plaintiff] was only able to recall one of three words at 15 minutes, and she may experience difficulties with her short-term memory. She was able to do Serial 7s, spell 'world' backwards correctly, interpret a simple proverb, and do simple math calculations. Her estimated intellectual functioning is average. Her insight and judgment are fair.

(Tr. 313.) Dr. Hatton concluded that "[t]he prognosis for [Plaintiff's] ability to maintain [sic] in a competitive work situation is guarded," that Plaintiff would require continued treatment, and that Plaintiff would need supervision if she is awarded benefits because "by her own admission she exercises very poor judgment with money." (Tr. 313–14.)

Next, Dr. DelBeato, an examining physician, administered a general clinical evaluation of Plaintiff on September 26, 2011. (Tr. 347–52.) In her mental status examination, Plaintiff was alert, oriented, had clear speech, and her remote memory was intact. (Tr. 348.) Plaintiff had a depressed mood and was anxious, which she exhibited by "constantly rubbing herself and scratching her self [sic] all over her body." (Tr. 348.) Dr. DelBeato reported the following results from mental examination tests he administered:

> [Plaintiff's] [i]mmediate recall is 5 digits forward and 3 digits backward which is mildly deficient. Concentration is poor due to anxiety. The claimant is able to do simple arithmetic and make small change without pencil and paper. She is able to do serial sevens; albeit slowly. Social, practical judgment for basic problem situations is good. Claimant is able to functionally abstract one common proverbs. Another proverb presented resulted in a tangential response. Insight is low functional. Thought process is coherent and intact. Patient is not psychotic. I observe no perceptual impairment.

(Tr. 348.) Dr. DelBeato concluded that Plaintiff's prognosis was poor, that Plaintiff's bipolar disorder "presents a significant barrier to stable employment," and that Plaintiff "is a high risk to decompensate in a work environment." (Tr. 349.) Further, Dr. DelBeato recommended a payee

trustee be appointed should Plaintiff be awarded benefits because although he found Plaintiff "competent to manage her own funds," he noted that Plaintiff had a history of alcohol dependence. (Tr. 349.)

Finally, Dr. Rodriguez reviewed and approved the treatment notes of treating nurse practitioner ("NP") Alma Reif. NP Reif treated Plaintiff with psychotherapy and medication management from February 2010 through February 2011, and Dr. Rodriguez reviewed and signed her treatment notes. (Tr. 338–41, 364–69, 372–77.) NP Reif diagnosed Plaintiff with bipolar disorder and treated her with medication. (Tr. 376–77.) In each of her treatment sessions with Plaintiff, NP Reif rated the level of Plaintiff's impairment in the areas of work, social life, leisure activities, family life, and home responsibilities. These ratings ranged from moderate impairment to severe impairment. (Tr. 338–41, 364–69, 372–77.)

In the Remand Order, the Court found that the ALJ erred in his evaluation of the opinions of Dr. Hatton, Dr. DelBeato, and Dr. Rodriguez. Specifically, while the ALJ assigned some weight to Dr. Hatton's global assessment functioning score, the ALJ did not indicate the weight he assigned to the remainder of Dr. Hatton's opinion. (Tr. 527.) This was error, the Court found, because it was unclear whether the ALJ incorporated or rejected the remainder of Dr. Hatton's opinion. (Tr. 527.) As to Dr. DelBeato, the ALJ accorded his opinion great weight and incorporated certain limitations into his RFC assessment. (Tr. 528.) The Court found that the ALJ erred, however, because the ALJ did not address Dr. DelBeato's opinions that Plaintiff had a high risk to decompensate in a work environment and that Plaintiff's bipolar disorder presents a barrier to her being capable of stable employment. (Tr. 528.) Accordingly, the Court concluded the ALJ erred because the Court could not determine whether the ALJ considered the entirety of Dr. DelBeato's opinion. (Tr. 528.)

Finally, the Court concluded that the ALJ erred by finding that Dr. Rodriguez's treatment notes did not constitute medical opinions. (Tr. 529.) The Court concluded that NP Reif's statements regarding the severity of Plaintiff's limitations constituted medical opinions. (Tr. 529–30.) And while the ALJ summarized some of these treatments notes, "he did not indicate whether he was assigning the opinions therein any weight or whether he even considered those portions to be 'medical opinions.'" (Tr. 530.) The Court found the ALJ's error with respect to Dr. Rodriguez "especially harmful in light of the fact these treatment notes spanned about one year and provide the most longitudinal assessment of Plaintiff's mental health status." (Tr. 530.)

Accordingly, the Court reversed the ALJ's decision and remanded with instructions to "[r]econsider the medical opinions in the administrative transcript, clearly specify the weight assigned to the opinions and articulate the reasons therefor." (Tr. 530.) The Appeals Council remanded the case to the ALJ to conduct proceedings consistent with the Remand Order. (Tr. 406.) "When a Federal court remands a case to the Commissioner for further consideration, the Appeals Council, acting on behalf of the Commissioner, may make a decision, or it may remand the case to an administrative law judge with instructions to take action and issue a decision or return the case to the Appeals Council with a recommended decision." 20 C.F.R. § 404.983. On remand, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order." *Id.* § 404.977(b); *see Apone v. Comm'r of Soc. Sec.*, 435 F. App'x 864, 865 (11th Cir. 2011) (quoting *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985), and holding that "[a] court 'may not alter, amend, or examine the mandate, or give any further relief or review, but must enter an order in strict compliance with the mandate.'").

On remand, and in the decision that is the subject of this appeal, the ALJ again failed to discuss the opinions contained in Dr. Rodriguez's treatment notes. The ALJ did not explicitly refer to Dr. Rodriguez or NP Reif in his decision; rather, the ALJ made two references to Dr. Rodriguez's treatment notes in his opinion. Specifically, when describing Plaintiff's mental impairments prior to April 29, 2014, the ALJ cited Dr. Rodriguez's treatment notes, among other sources, and stated "[e]xaminations had assessed [Plaintiff] with bipolar, but it also consistently noted that she was cooperative and only had mild problems with concentration." (Tr. 387.) Further, the ALJ cited Dr. Rodriguez's treatment notes, stating that Plaintiff reported being unable to afford psychotropic medication and was therefore reliant on samples. (Tr. 387.) As Plaintiff contends (Dkt. 13 at 8), the ALJ again did not discuss Dr. Rodriguez's opinions that Plaintiff had moderate to severe limitations in the areas of work, social life, leisure activities, family life, and home responsibilities. This does not comport with the Remand Order's directive to reconsider the medical opinions, clearly specify the weight assigned to the opinions, and articulate the reasons for such assignment of weight. (Tr. 530.) Further, this error is not harmless, but instead, as the Court in the Remand Order found, is "especially harmful in light of the fact these treatment notes spanned about one year and provide the most longitudinal assessment of Plaintiff's mental health status." (Tr. 530.) Accordingly, Plaintiff's first contention as to Dr. Rodriguez requires reversal.

Next, on remand, the ALJ discussed Dr. Hatton's opinion as follows:

> Consultative examiner Billie Jo Hatton, Ph.D., opined that the claimant's prognosis is guarded, and would need a payee because of poor control with money (Exhibit 5F/5-6). Because Dr. Hatton was able to directly examine the claimant and the opinion is largely consistent with the evidence, it is given some weight.

(Tr. 389.) The ALJ discussed Dr. DelBeato's opinion as follows:

> Don DelBeato, Ph.D., opined that the claimant's bipolar is a significant barrier to stable employment, and that her prognosis for rehabilitation is poor (Exhibit 13F/3). He also opined due to history of alcohol dependence a payee trustee is recommended. This opinion is given little weight; the claimant appeared to be able

- 9 -

> to work in the past despite her mental impairments, and it appears that her mental impairments can be controlled with medications.

(Tr. 389.) Generally, Plaintiff argues that these analyses were far too cursory to comply with the Remand Order. (Dkt. 13 at 11.) Further, Plaintiff argues that to afford Dr. Hatton's opinions some weight because she examined Plaintiff "while rejecting Dr. DelBeato's examining opinion without any consideration of his examination status" is inconsistent. (Dkt. 13 at 11.)

Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of the claimant's impairments, including the claimant's symptoms, diagnosis, prognosis, ability to perform despite impairments, and physical or mental restrictions. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178–79 (11th Cir. 2011) (internal quotation and citation omitted); 20 C.F.R. § 404.1527(a)(1). An ALJ is required to evaluate every medical opinion. 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). When assessing the medical evidence, the ALJ must state, with particularity, the weight afforded to medical opinions and the reasons for such assignment of weight. *Winschel*, 631 F.3d at 1179. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" *Id.* (quoting *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)). Thus, an ALJ must "state with at least some measure of clarity the grounds for his decision." *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

The Court agrees with Plaintiff that the ALJ's discussion of the opinions of Dr. Hatton and Dr. DelBeato are cursory, especially considering being instructed to reconsider these opinions and clearly articulate his reasoning for his assignment of weight to these opinions. For example, although the ALJ accorded Dr. Hatton's opinion some weight, it is unclear what effect, if any, this

assessment had on the ALJ's RFC assessment. Also, as found in the Remand Order (Tr. 528), the ALJ again did not address Dr. DelBeato's opinion that Plaintiff had a high risk to decompensate in a work environment. In light of the Court's remand for further consideration of Dr. Rodriguez's opinion, it is appropriate for the ALJ to also reconsider and adequately explain his reasoning for his evaluations of the opinions of Dr. Hatton and Dr. DelBeato. Accordingly, as the ALJ did not comply with the Appeals Council's instructions on remand, Plaintiff's first contention warrants reversal.

### B. Date of Disability

Plaintiff alleged an onset date of July 5, 2009, but the ALJ determined that Plaintiff's disability began on April 29, 2014. (Tr. 382, 383.) The entirety of the ALJ's decision centers on his findings that Plaintiff was not disabled prior to April 29, 2014, but became disabled on April 29, 2014. (Tr. 391–93.) Plaintiff argues that the ALJ's choosing April 29, 2014, as Plaintiff's disability onset date was arbitrary because substantial evidence does not show that Plaintiff's condition worsened on that date. (Dkt. 13 at 12.)

The ALJ found that Plaintiff's allegations regarding her symptoms are generally credible beginning on April 29, 2014. (Tr. 390.) The ALJ cited a consultative examination conducted on April 29, 2014, by Dr. Thomas Antonek. (Tr. 390.) Dr. Antonek performed a mental status examination of Plaintiff on April 29, 2014, at the request of the Florida Department of Health, Division of Disability Determinations. (Tr. 725–28.) During Plaintiff's evaluation, Dr. Antonek noted that Plaintiff's psychomotor movements were "hyperactive," her mood and affect were anxious, and that Plaintiff "did not appear to be malingering." (Tr. 725.) Although he found Plaintiff cooperative and compliant, she was "extremely anxious throughout the entire interview and had to get up and walk around the office while being interviewed." (Tr. 725.) In a mental

status examination, Plaintiff was unable to spell the word "world" backwards, completed the serial sevens correctly only once, was able to recall only one of three words after a short delay, and confused her right and left hands. (Tr. 727.) Dr. Antonek concluded that Plaintiff had significant memory problems that would interfere with her daily functioning. (Tr. 727.) More broadly, Dr. Antonek concluded that Plaintiff's symptoms "appear to be severely impacting activities of daily living, vocational performance, and interpersonal functioning at this time." (Tr. 728.) Also, he found her emotional and psychological functioning poor. (Tr. 728.)

In evaluating Plaintiff's RFC beginning on April 29, 2014, the ALJ also considered the December 7, 2015, opinion of Dr. Harvey Spikol, in which Dr. Spikol found that Plaintiff had mild limitations in performing activities of daily living, maintaining social functioning, and maintaining concentration, persistence, or pace. (Tr. 390, 751.) The ALJ accorded this opinion some weight, but found that "recent findings that the claimant was extremely anxious and experiencing significant memory problems support greater limitations. Examinations after the alleged onset date also support the alleged degree of [Plaintiff's] limitations." (Tr. 390.)

Plaintiff argues that "[w]hile the ALJ credited [Dr. Antonek's] opinion and relied on it in finding Plaintiff disabled as of April 29, 2014, *there is no indication in Dr. Antonek's opinion that the limitations contained in his report began on this date, and the ALJ's finding to the contrary is patently unreasonable*." (Dkt. 13 at 13) (emphasis in original). Evidence before April 29, 2014, Plaintiff argues, establishes Plaintiff's disability, including the opinions of Dr. DelBeato, Dr. Rodriguez, and Dr. Hatton. (Dkt. 13 at 13–14.) In sum, while Plaintiff agrees that Plaintiff was disabled on and after April 29, 2014, she argues that the evidence supports a finding that she was disabled since her alleged onset date of July 15, 2009. (Dkt. 13 at 14–15.)

"In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability." *Titles II & Xvi: Onset of Disability*, SSR 83-20 (S.S.A. 1983).[1] The onset date is "the first day an individual is disabled as defined in the Act and the regulations," and "[f]actors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical evidence." *Id.*

Although the ALJ appears to have chosen April 29, 2014 as Plaintiff's disability onset date because it is the date Dr. Antonek performed his evaluation, the ALJ does not provide reasoning for this choice. The ALJ states, without citation, that "[e]xaminations on and after the established onset date support that her mental impairments had worsened." (Tr. 390.) The only examinations conducted after the disability onset date that the ALJ cited were conducted by Dr. Antonek and Dr. Manjusri Vennamaneni. (Tr. 390.)[2] Dr. Antonek does not identify April 29, 2014 as the date Plaintiff's condition worsened; rather, Plaintiff reported to Dr. Antonek that her condition has declined "over the course of the past 8 years." (Tr. 726.) Dr. Vennamaneni treated Plaintiff on July 17, 2015, for a foot injury after Plaintiff dropped a concrete bird bath on her left foot. (Tr. 734.) Plaintiff also reported that she is bipolar and reported feelings of sadness. (Tr. 734.) Dr. Vennamaneni assessed Plaintiff's mental status during the examination as follows: Plaintiff had a normal attitude and affect but an abnormal mood and was at risk of suicide. (Tr. 736.) He therefore referred Plaintiff to psychological counseling. (Tr. 734–37.)

Upon review of these examinations, there is nothing contained in them indicating that Plaintiff's condition worsened on April 29, 2014. Therefore, the Court cannot say that the ALJ's

---

[1] *See Caces v. Comm'r of Soc. Sec.*, 560 F. App'x 936, 938 (11th Cir. 2014) (explaining that "[a]lthough Social Security Rulings are not binding, we accord the rulings great respect and deference if the underlying statute is unclear and the legislative history offers no guidance," and that "Social Security Ruling 83–20 prescribes the policy and procedure by which the Commissioner should determine the onset date of a disability").
[2] Dr. Spikol provided an opinion but did not examine Plaintiff. (See Tr. 750, Interrogatory 5.)

onset date is supported by substantial evidence. *See Baker v. Comm'r of Soc. Sec.*, 384 F. App'x 893, 896 (11th Cir. 2010) ("If an action is to be upheld, it must be upheld on the same bases articulated in the agency's order."); *Owens*, 748 F.2d at 1516 (explaining that the courts' "function is to ensure that the [ALJ's] decision was based on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts, and reasoning that "[b]ecause the ALJ did not provide us with the information essential to such an evaluation, we reverse with instructions to the district court to remand for further findings at the administrative hearing level"). Accordingly, Plaintiff's second contention warrants reversal.

### C. Mental Limitations

At step three, in determining whether Plaintiff's impairments met a Listing, the ALJ concluded that Plaintiff has marked difficulties with regard to concentration, persistence, or pace. (Tr. 385.) The ALJ erred, Plaintiff argues, by failing to account for this marked limitation in his RFC assessment for prior to April 29, 2014. (Dkt. 13 at 17.)

"Agency regulations require the ALJ to use the 'special technique' dictated by the [Psychiatric Review Technique Form] PRTF for evaluating mental impairments." *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005); 20 C.F.R. § 404.1520a. Utilization of the special technique requires separate evaluations concerning how the claimant's mental impairment impacts four functional areas: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." *Moore*, 405 F.3d at 1213–14; 20 C.F.R. § 404.1520a(c)(3). While the PRT and RFC are distinct analyses, "nothing precludes the ALJ from considering the results of the former in his determination of the latter." *Winschel*, 631 F.3d at 1180 (quoting *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004), and reasoning that "[w]hile [Social Security Ruling] 96–8p does state that the [PRT] findings are 'not an RFC assessment' and

that step four requires a 'more detailed assessment,' it does not follow that the findings on the [PRT] play no role in steps four and five, and [Social Security Ruling] 96–8p contains no such prohibition").

Thus, where the ALJ determines that a claimant's mental impairments cause limitations in maintaining concentration, persistence, and pace, "the ALJ should [ ] explicitly include[] the limitation in his hypothetical question to the vocational expert," unless the "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace." *Winschel*, 631 F.3d at 1180–81.

Here, after finding that Plaintiff has marked difficulties with concentration, persistence, and pace (Tr. 385), the ALJ concluded that, prior to April 29, 2014, Plaintiff retained the RFC to maintain attention and concentration for two hours before requiring a ten-minute break. (Tr. 386.) Thus, the ALJ explicitly incorporated a concentration limitation into his RFC. *See Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 871–72, n.1 (11th Cir. 2011) (finding that the ALJ's hypothetical to the VE explicitly accounted for the claimant's limitations in concentration, persistence, and pace where "the ALJ stated explicitly in the hypothetical question that [claimant] had a limitation in her ability to concentrate for more than brief periods of time").

Further, "limiting the hypothetical questions to include only unskilled work sufficiently accounts for the claimant's limitations in maintaining his concentration, persistence, or pace where the medical evidence demonstrates that the claimant can engage in simple, routine tasks or unskilled work despite his limitations." *Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950–51 (11th Cir. 2013); *Jarrett*, 422 F. App'x at 872 ("[T]he ALJ's restriction to simple instructions and simple tasks in the first hypothetical question sufficiently accounted for [claimant's] limitations in concentration, persistence and pace because, despite these limitations, the medical

evidence in the record demonstrated that [claimant] retained the ability to follow simple instructions and complete simple tasks."). Here, the ALJ found Plaintiff capable of performing simple and repetitive tasks. (Tr. 386.) The ALJ supported this finding by citing the opinions of Dr. Michael Stevens and Dr. B. Lee Hudson (Tr. 388), who both opined that Plaintiff is capable of understanding, remembering, and carrying out short, simple instructions (Tr. 333–34, 495–97). *See Jacobs*, 520 F. App'x at 951 ("The ALJ's hypothetical questions to the vocational expert fully accounted for [claimant's] moderate difficulties in maintaining his concentration, persistence, or pace by limiting him to one to three step non-complex tasks, consistent with the RFC assessment."). Upon review of the evidence, this finding is supported by substantial evidence.

Accordingly, contrary to Plaintiff's assertion, the ALJ's RFC assessment, for prior to April 29, 2014, properly accounted for Plaintiff's limitations with maintaining concentration, persistence, or pace.

### D. Credibility Assessment

As her final argument on appeal, Plaintiff argues that the ALJ failed to consider her work history in assessing the credibility of Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms before April 29, 2014. (Dkt. 13 at 19.) Plaintiff contends that her lengthy and lucrative work history "argues against the possibility of malingering," and that this is a factor the ALJ should have considered in evaluating Plaintiff's credibility. (Dkt. 13 at 19.) In response, Defendant argues that the ALJ's decision demonstrates that he considered Plaintiff's work record and her testimony about her work history, and was not required to provide any further articulation regarding Plaintiff's work history in his credibility assessment. (Dkt. 14 at 14.)

If an ALJ determines that the claimant's medical condition could reasonably be expected to produce the claimant's pain or other symptoms, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms, including pain, to determine their effect on the claimant's capacity to work. 20 C.F.R. § 404.1529(c)(1); *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 776–77 (11th Cir. 2010). The ALJ considers all available evidence, including objective medical evidence, information about the claimant's prior work record, statements from the physicians and others, and medical opinions. 20 C.F.R. § 404.1529(c)(1)–(3). Additionally, the ALJ considers (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant took to alleviate pain or other symptoms; (5) treatment the claimant received for relief of pain or other symptoms; and (6) any measures the claimant personally used to relieve pain or other symptoms. *Id.* § 404.1529(c)(3). The ALJ evaluates the credibility of the claimant's testimony based on whether it is reasonably consistent with this evidence. *Id.* § 404.1529(c)(4).

An ALJ's determination of the credibility of a claimant's testimony regarding his or her symptoms is entitled to deference and a reviewing court will not disturb a clearly-articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995). Thus, if an ALJ discredits a claimant's testimony, the ALJ must articulate, explicitly and adequately, reasons for not crediting the testimony. *Holt v. Sullivan*, 921 F.2d 1221, 1223–24 (11th Cir. 1991). "Implicit in this rule is the requirement that such articulation of reasons . . . be supported by substantial evidence." *Hale v. Bowen*, 831 F.2d 1007, 1012 (11th Cir. 1987). Therefore, as the reviewing Court, "[t]he question is not . . . whether ALJ could have

reasonably credited [claimant's pain] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011).

While a claimant's "prior work record" is a consideration in evaluating a claimant's credibility, 20 C.F.R. § 404.1529(c)(3), "the Eleventh Circuit has not had occasion to rule on the issue" of whether an ALJ's failure to consider a claimant's "lengthy and consistent work record" in evaluating a claimant's credibility is erroneous. *Lafond v. Comm'r of Soc. Sec.*, No. 6:14-CV-1001-ORL-DAB, 2015 WL 4076943, at *9 (M.D. Fla. July 2, 2015). In support of her argument, Plaintiff cites to non-binding decisions. (Dkt. 13 at 19) (citing *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980); *Taybron v. Harris*, 667 F.2d 412, 415 n.6 (3d Cir. 1981) (finding that a claimant's testimony about the claimant's "work capabilities" should be accorded substantial credibility "when the claimant has worked for a long period of time"); *Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) ("[A]ny evidence of a desire by [claimant] to work would merely emphasize the positive value of his 32-year employment history. A claimant with a good work record is entitled to substantial credibility when claiming an inability to work because of a disability."); and *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)). Not only are these cases non-binding, it is unclear how *Allen* or *Polaski* support Plaintiff's argument. First, In *Allen*, the Sixth Circuit did not examine the issue of an ALJ's credibility assessment. *Allen*, 613 F.2d at 147. Rather, the Sixth Circuit examined a physician's statement that the claimant had a possible decline in her motivation. *Id.* The ALJ concluded that this was not a basis to deny disability benefits because the claimant "can hardly be faulted for accepting the medical advice which was available to her nor can she be faulted for failure of the medical procedures and treatment to return her to a condition where she can work without disabling pain." *Id.* The ALJ considered that the claimant had a lucrative past work, which would "normally supply motivation to return to work," and she generally

demonstrated "a considerable inclination toward employment." *Id.* In *Polaski*, the Eight Circuit agreed that a claimant's prior work record is a factor in evaluating a claimant's subjective complaints. *Polaski*, 739 F.2d at 1322.

The ALJ concluded that Plaintiff's statements about her symptoms prior to April 29, 2014, were not fully credible. (Tr. 387, 389.) Although the ALJ did not expressly discuss Plaintiff's work history in assessing her statements regarding her symptoms, it is clear the ALJ reviewed and considered statements regarding her prior work record. *See Coleman v. Astrue*, No. 8:11-CV-1783-T-TGW, 2012 WL 3231074, at *5 (M.D. Fla. Aug. 6, 2012) (finding no error in the ALJ's credibility assessment because "[w]hile the law judge did not discuss the plaintiff's work history specifically in the context of her credibility finding, she obviously considered the plaintiff's work history in making her decision"). First, the ALJ considered Plaintiff's testimony that she "previously worked as a successful car salesperson, but testified that she got to the point where she could not remember what she was saying." (Tr. 387.) Further, the ALJ considered reports contained in medical opinions regarding Plaintiff's past work (Tr. 387, 388–89): Plaintiff reported to Dr. Hatton that she had to quit her job "because she was forgetting things and was having anxiety attacks and she almost ran over a customer with a golf cart" (Tr. 312); Plaintiff reported to Dr. DelBeato that "[s]he last worked in 2008" at which time "she reports she 'lost it' at work and struck a customer with a golf cart" (Tr. 347); Dr. Stevens stated that his review of Plaintiff's record showed that Plaintiff was fired in July 2009 for "not selling enough cars due to poor economy," but was currently working two days a week with the hopes of working full-time when the economy improves (Tr. 331); and Plaintiff reported to NP Reif that she was fired from her job because she "backed into planter at work, was not functioning," but, after resuming her medications, was re-hired by her employer (Tr. 298).

Further, in reaching his credibility determination, the ALJ appropriately considered Plaintiff's daily activities of being able to drive, go shopping, and do some household cleaning (Tr. 389), treatment notes showing that Plaintiff's symptoms improved when she resumed taking her medications after going "cold turkey" (Tr. 298, 387), and opinion evidence (Tr. 387–89). *See* 20 C.F.R. § 404.1529(c). Therefore, the ALJ considered the appropriate evidence in reaching his conclusion about the credibility of Plaintiff's statements about her symptoms' intensity, persistence, and limiting effects. This conclusion was adequately explained and supported by substantial evidence. Accordingly, Plaintiff's final contention does not warrant reversal.

## CONCLUSION

Accordingly, after due consideration and for the foregoing reasons, it is

**ORDERED**:

1. The decision of the Commissioner is **REVERSED** in part and the case is **REMANDED** under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

2. The Clerk of the Court is directed to enter judgment consistent with this Order.

**DONE** and **ORDERED** in Tampa, Florida, on August 7, 2017.

/s/ Julie S. Sneed
JULIE S. SNEED
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record